

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 22, 1960

Mr. Frank M. Jackson
Executive Secretary
Teacher Retirement System of Texas
Austin, Texas

Opinion No. WW-815

Re: Does the Board of Trustees
of the Teacher Retirement
System of Texas have the
authority to make payment
out of the Teacher Retire-
ment Expense Fund to the
General Revenue Fund for
rent for space occupied by
the Teacher Retirement Sys-
tem in the State Office
Building and related ques-

Dear Mr. Jackson: tions.

We quote as follows from your recent letter:

"1. Does the Board of Trustees of the
Teacher Retirement System of Texas have the
authority to make payment out of the Teacher
Retirement System Expense Fund to the General
Revenue Fund for rent for space occupied by the
Teacher Retirement System in the State Office
Building?

"2. If the answer to question 1 is affirm-
ative, what State Official should bill the Teach-
er Retirement System for rent and deposit the
rent paid to the General Revenue Fund?

"3. Does the Board of Trustees of the
Teacher Retirement System of Texas have the
authority to make payment out of the Teacher
Retirement System Expense Fund to the General
Revenue Fund the amount certified by the State
Auditor in the form of a Comptroller's P-1 in-
voice as the cost of the audit made during the
year ended August 31, 1959?"

An appropriation by the Legislature is not necessary in order for the Board of Trustees of the Teacher Retirement System to make the expenditures in question. Attorney General's Opinions WW-600 (1959) and WW-565 (1959). In Attorney General's Opinion WW-565 (1959) we said, in part, as follows:

> ". . . the respective funds of the two retirement systems here involved /the Teacher Retirement System and the State Employees Retirement System/ may be expended in accordance with the general laws governing the operation of the two systems without prior specific appropriation by the Legislature of Texas. . . ." (Emphasis added).

Section 10 of Article 2922-1, Vernon's Texas Civil Statutes, provides for the creation of the various funds of the Teacher Retirement System. Included is the Expense Fund from which all expenses of administration and maintenance are directed to be paid. Section 12 of the statute places the general administration and responsibility for the proper operation of the System in a Board of Trustees and authorizes the Board to establish rules and regulations for the administration of the funds created by the Act and for the transaction of its business. More particularly, Section 12 provides in part:

> ". . . persons engaged by the State Board of Trustees, and all other expenses of the Board necessary for the operation of the Retirement System, shall be paid at such rates and in such amounts as the State Board of Trustees shall approve, provided that in no case shall they be greater than that paid for like or similar service of the State of Texas." (Emphasis added).

This Department has approved a provision proposed to be incorporated in the General Appropriations Bill which would appropriate to various special fund agencies occupying space in the State Office Building a certain sum for the payment of office rent to the State Building Fund. Attorney General's Opinion WW-604 (1959). There it was said:

"Since the occupancy of such space is
necessary to the carrying out of the par-
ticular duties of an agency of the State,
the Legislature is authorized to appropriate
moneys for the payment of rent. . . ." and
". . . the above quoted language is valid
since it carries out the purpose of the gen-
eral law creating the special funds . . ."

The same reasoning compels a like result in the
present case. According to your letter, the agency was
directed by the State Building Commission to move into
the State Office Building. This agency, like others hous-
ed in the State Office Building, is being billed for rent.
The payment of rent for space occupied by the Teacher Re-
tirement System in the State Office Building is clearly
necessary to carry out the purpose of the general law creat-
ing the special fund. Beyond a doubt it is an "expense of
the Board necessary for the operation of the Retirement
System" within the meaning of Section 12, Article 2922-1,
Vernon's Texas Civil Statutes.

From the above quoted portion of Section 12 it is
seen that the amount to be paid as rental is left up to
the Board so long as the amount is based upon actual ex-
penses of the Board necessary for the operation of the Re-
tirement System and is not greater than the rent paid by
other agencies of the State. Hence, your first question is
answered in the affirmative.

Turning now to your second question, Section 7 of Ar-
ticle 678m, Vernon's Texas Civil Statutes, provides, in part,
as follows:

"The Commission shall obtain title for the
State and retain control of the real property ac-
quired for sites and of the buildings located
thereon until final construction is completed
and the buildings are occupied by the State agen-
cies to be housed therein, at which time the
management and control of said buildings shall be
transferred to the Board of Control. . . ."

We are advised by the State Building Commission that in
the case of the State Office Building this transfer has been
made to the Board of Control. Therefore, it is our opinion
that the Board of Control has the responsibility of billing
the Teacher Retirement System for rent in the State Office

Building, and your second question is answered accordingly.

Cogent to this inquiry is the fact that the Teacher Retirement System Act, Article 2922-1, Vernon's Texas Civil Statutes, provides an exclusive method whereby payments are to be made from the funds under the control of the State Board of Trustees of the Teacher Retirement System. Subsection 3 of Section 13 of that Article provides as follows:

> "The Treasurer of the State of Texas shall be the custodian of all bonds, securities, and funds. All payments from said funds shall be made by him on warrants drawn by the State Comptroller of Public Accounts supported only upon vouchers signed by the Executive Secretary of the Retirement System. A duly attested copy of a resolution of the State Board of Trustees designating such person shall be filed with said Comptroller as his authority for issuing such warrants."

It follows that the expense of office rent is to be paid in the manner prescribed above and in no other way.

We observe that Section 15 under Article III of the General Appropriations Bill of the 56th Legislature refers to the payment of office rent by transfers from Special Funds to the General Revenue Fund. That provision, however, does not apply here since it relates only to the agencies grouped under Article III, and the Teacher Retirement System is classified in the General Appropriations Bill under Article IV.

Relative to your third question, Article IV of the General Appropriations Bill of the 56th Legislature in referring to the Teacher Retirement System appropriates a certain sum to the "Special Trust Account in the hands of the Treasurer," and Article V, Section 10 of the general provisions of the bill provides:

> "None of the appropriations herein made shall be used to employ any firm or person to audit the books of any department, board, commission, institution or State agency, this being the duty

of the State Auditor; provided, however, that in any instances where the funds available to said State Auditor are not, in his judgment, sufficient for any requested or contemplated audit, the department head or heads having authority to disburse the appropriations herein made are hereby authorized to direct the State Comptroller to transfer from any appropriations to the appropriation herein made for the State Auditor the amount which in the judgment of the State Auditor is necessary for the purpose of making such audit."

However, the Legislature cannot by rider in an appropriation bill amend a general law. Attorney General's Opinions V-1304 (1951) and WW-604 (1959). Therefore, any authority the Board has to pay the cost of the audit must be found in the general law governing the Teacher Retirement System.

From what we have already said, it is clear that the general law governing the Teacher Retirement System authorizes the Board of Trustees of the System to pay this claim for an audit if the Board finds it to be an expense necessary for the operation of the Retirement System, and it is no more than the amount paid by other State agencies for the audit. This the Board of Trustees has apparently done since it amended its budget to provide for the payment of such claim. But the cost of the audit, like the rental payment, must be paid according to the exclusive procedure provided in Subsection 3 of Section 13, Article 2922-1, Vernon's Texas Civil Statutes, the above quoted portion of the General Appropriations Bill to the contrary notwithstanding. Your third question is consequently answered in the affirmative.

## SUMMARY

The Board of Trustees of the Teacher Retirement System has authority to pay rent out of the Expense Fund of the Teacher Retirement System to the General Fund for space occupied in the State Office Building. The Board of Control has the responsibility of billing the Teacher Retirement System for rent. The

Mr. Frank M. Jackson, page 6 (WW-815)


Board of Trustees of the Teacher Re-
tirement System has authority to pay
out of the Expense Fund the cost of
an audit made by the State Auditor.
All payments from the Expense Fund are
to be made in accordance with the pro-
cedure prescribed in Subsection 3 of
Section 13 of Article 2922-1, Vernon's
Texas Civil Statutes.


Yours very truly,

WILL WILSON
Attorney General of Texas


By *Henry G. Braswell*
Henry G. Braswell
Assistant

HGB:mg:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Lawrence Hargrove
Jay D. Howell
Raymond V. Loftin, Jr.
Charles D. Cabaniss

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore